**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WAH CHANG, a division of TDY
Industries, Inc., a California
corporation,
           *Plaintiff-Appellant,*

              v.

DUKE ENERGY TRADING AND
MARKETING, LLC, a Delaware
limited liability company; RELIANT
ENERGY SERVICES INC., a Delaware
corporation; TRANSALTA ENERGY
MARKETING (CALIFORNIA), INC., a
Delaware corporation,
              *Defendants-Appellees.*

No. 05-55367

D.C. No.
CV-04-01839-RHW

15087

WAH CHANG, a division of TDY
Industries, Inc., a California
corporation,
                    *Plaintiff-Appellant,*

                    v.

AVISTA CORPORATION, a
Washington corporation; AVISTA
ENERGY, INC., a Washington
corporation; AVISTA POWER LLC, a
Washington limited liability
company; DYNEGY POWER
MARKETING, INC., a Texas
corporation; EL PASO ELECTRIC
COMPANY, a Texas corporation;
IDACORP INC., an Idaho
corporation; IDAHO POWER
COMPANY, an Idaho corporation;
IDACORP ENERGY, L.P., a
Delaware limited partnership;
PORTLAND GENERAL ELECTRIC
COMPANY, an Oregon corporation;
POWEREX CORPORATION, a British
Columbia corporation; PUGET
ENERGY, INC., a Washington
corporation; PUGET SOUND ENERGY,
INC., a Washington corporation;
SEMPRA ENERGY, a California
corporation; SEMPRA ENERGY
RESOURCES, a California
corporation; SEMPRA ENERGY
TRADING, a Delaware corporation;
WILLIAMS POWER COMPANY INC., a
Delaware corporation,
                    *Defendants-Appellees.*

No. 05-55369
D.C. No.
CV-04-01840-RHW
OPINION

Appeal from the United States District Court
for the Southern District of California
Robert H. Whaley, District Judge, Presiding

Argued and Submitted
April 10, 2007—Pasadena, California

Filed November 20, 2007

Before: Harry Pregerson, Ferdinand F. Fernandez and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Fernandez;
Dissent by Judge Pregerson

**COUNSEL**

Edward A. Finklea, Cable Huston Benedict Haagensen & Lloyd, LLP, Portland, Oregon; Richard H. Williams, Lane Powell PC, Portland, Oregon, for the plaintiff-appellant.

Gordon P. Erspamer, Morrison & Foerster LLP, Walnut Creek, California, for defendants-appellees Transalta Energy Marketing (U.S.), Inc., Transalta Energy Marketing (California), Inc., IDACORP, Inc., Idaho Power Company, and IDA-CORP Energy L.P.; David M. Jacobson, Dorsey & Whitney LLP, Seattle, Washington, for defendants-appellees Avista Corporation, Avista Energy, Inc., and Avista Power, LLC.; Joel B. Kleinman, Dickstein, Shapiro, Morin & Oshinsky, Washington, D.C., for defendant-appellee Duke Energy Trading and Marketing, L.L.C.; Michael J. Kass, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California, for defendant-appellee Dynegy Power Marketing, Inc.; Kenneth R. Heitz, Irell & Manella LLP, Los Angeles, California, for defendant-appellee El Paso Electric Company; Steven M. Wilker, Tonkon Torp, LLP, Portland, Oregon, for defendant-appellee Portland General Electric Company; Andrew M. Edison, Bracewell & Giuliani, LLP, Houston, Texas, for defendant-appellee Powerex Corp.; Thomas L. Boeder, Perkins Coie, LLP, Seattle, Washington, for defendants-appellees Puget Energy, Inc. and Puget Sound Energy, Inc.; Terry J. Houlihan, Bingham McCutchen, San Francisco, California, for defendant-appellee Reliant Energy Services, Inc.; Michael J. Weaver, Latham & Watkins, LLP, San Diego, California, for defendants-appellees Sempra Energy, Sempra Energy Resources, and Sempra Energy Trading Corp.; Jeffrey M. Shohet, DLA Piper Rudnick Gray Cary US LLP, San Diego, California, for defendant-appellee Williams Power Company Inc.

---

## OPINION

FERNANDEZ, Circuit Judge:

Wah Chang, a division of TDY Industries, Inc., a California corporation, appeals the district court's dismissal of its actions against Duke Energy Trading and Marketing, L.L.C.,

Avista Corporation, and a multitude of other companies (all hereafter referred to as the Energy Companies). Wah Chang, whose complaints arise out of the energy crisis of 2000-2001, seeks to recover damages because of the difference between the rate it was actually charged for electricity, which was a retail rate based upon the wholesale rate, and the rate that it claims a fair rate would have been were it not for manipulation of the market by the Energy Companies and others. Like the actions of those who have come before it, Wah Chang's actions must fail. We affirm.

## BACKGROUND

As pled by Wah Chang,[1] it purchased electricity for its plant in Oregon at retail from PacifiCorp, a purchaser of electricity in the wholesale spot market. Under its purchase contract, Wah Chang's rates were indexed to the wholesale spot market price at the California-Oregon border so that price changes in that market were passed on to Wah Chang.

During the 2000-2001 energy crisis, the wholesale price of electricity increased substantially,[2] and so too did Wah Chang's costs. It asserts that the reason for the change was rates that were artificially increased by the Energy Companies through their anticompetetive and fraudulent manipulation of the wholesale markets, which affected customers, like Wah Chang, who purchased power in the Pacific Northwest market. Of course, the rates in question were, as a matter of law,

---

[1]Because the district court dismissed Wah Chang's complaints pursuant to Federal Rule of Civil Procedure 12(b)(1), all material factual allegations in the complaint are taken as true. *See Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005); *United States v. One 1997 Mercedes E420*, 175 F.3d 1129, 1130 n.1 (9th Cir. 1999) (per curiam).

[2]We have outlined the nature of that crisis previously, and need not repeat the history here. *See California ex rel. Lockyer v. FERC*, 383 F.3d 1006, 1009-10 (9th Cir. 2004), *petitions for cert. filed*, 75 U.S.L.W. 3355 (Dec. 28, 2006), 75 U.S.L.W. 3410 (Feb. 05, 2007); *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 836-37 (9th Cir. 2004).

a result of tariffs approved by the Federal Energy Regulatory Commission under its market-based rate setting approach. We have described the nature of that approach in our prior forays into this territory. *See, e.g.*, *Pub. Util. Dist. No. 1 of Snohomish County v. Dynegy Power Mktg.*, 384 F.3d 756, 760-61 (9th Cir. 2004); *Lockyer*, 383 F.3d at 1012-13. Suffice it to say that its legal effect is the same as the effect of any other tariff set by FERC. *See, e.g.*, *Snohomish County*, 384 F.3d at 761; *Pub. Util. Dist. No. 1 of Grays Harbor County Wash. v. IDACORP Inc.*, 379 F.3d 641, 650-52 (9th Cir. 2004); *Dynegy*, 375 F.3d at 852-53. Because of that, the district court dismissed these actions. Wah Chang appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's decision to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) de novo. *See Assoc. of Am. Med. Colls. v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000).

## DISCUSSION

**[1]** While the problems arising out of the 2000-2001 energy crisis were serious and even scandalous, we have often discussed them at length. Moreover, we have analyzed the market-based approach and have, effectively, said that the claims of those who have come before us must be presented to FERC. Thus, we have turned away purchasers of electricity when they have attempted to bring a direct federal rate action against sellers in the position of the Energy Companies. *See Grays Harbor*, 379 F.3d at 646-52; *Dynegy*, 375 F.3d at 849-53. We have done so on the basis of a number of doctrines, including the filed rate doctrine.

**[2]** That doctrine is a form of deference and preemption, which precludes interference with the rate setting authority of

an administrative agency, like FERC. *See Dynegy*, 375 F.3d at 852-53. It is a far reaching doctrine. As we have explained:

> At its most basic, the filed rate doctrine provides that state law, and some federal law (e.g. antitrust law), may not be used to invalidate a filed rate nor to assume a rate would be charged other than the rate adopted by the federal agency in question. The doctrine applies to rates charged by railroads, natural gas companies, and other interstate operators over whom federal agencies have exclusive power to set rates. More relevant here, the Supreme Court has extended the doctrine to the Federal Power Act and to electricity rates.
>
> . . . .
>
> As further developed, the filed rate doctrine has prohibited not just a state court (or a federal court applying state law) from setting a rate different from that chosen by FERC, but also from assuming a hypothetical rate different from that actually set by FERC.

*Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 929-30 (9th Cir. 2002) (*TANC*) (citations omitted); *see also Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 578-579, 101 S. Ct. 2925, 2931, 69 L. Ed. 2d 856 (1981) (speculation on what Commission "might have done" is prohibited). And, as we have explained, the doctrine applies to the market-based tariffs and rates in question here, even if they were not set in the traditional way. *See Snohomish County*, 384 F.3d at 761; *Lockyer*, 383 F.3d at 1012-13; *Grays Harbor*, 379 F.3d at 650-51; *Dynegy*, 375 F.3d at 852-53.

[3] The filed rate doctrine's fortification against direct attack is impenetrable. It turns away both federal and state

antitrust actions;[3] it turns away Racketeer Influenced and Corrupt Organization Act actions;[4] it turns away state tort actions;[5] and it even turns away state attempts to assert sovereign power to commandeer power contracts.[6] In short, it turns away attempts like Wah Chang's, which necessarily hinge on a claim that the FERC approved rate was too high and would, therefore, undermine FERC's tariff authority through the medium of direct court actions against the Energy Companies.[7]

[4] But, argues Wah Chang, its actions differ from others we have considered because it did not directly purchase wholesale power. Rather, it was a retail customer. That is an asthenic distinction at best. If we do not have a retail customer's case on all fours with this one, we do have a case standing on three legs, with the fourth just a millimeter off the ground. We have considered a situation where direct retail (residential and commercial) customers of a utility sued it and its FERC regulated pipeline subsidiary for alleged antitrust violations. *County of Stanislaus*, 114 F.3d at 860. We deter-

---

[3]*See Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 422, 106 S. Ct. 1922, 1929-30, 90 L. Ed. 2d 413 (1986); *Keogh v. Chi. & Nw. Ry. Co.*, 260 U.S. 156, 162, 43 S. Ct. 47, 49, 67 L. Ed. 183 (1922); *County of Stanislaus v. Pac. Gas & Elec. Co.*, 114 F.3d 858, 863 (9th Cir. 1997).

[4]We have not previously addressed RICO as such. However, we agree with the Second Circuit Court of Appeals that those actions are barred. *See Sun City Taxpayers' Ass'n v. Citizens Utils. Co.*, 45 F.3d 58, 61-62 (2d Cir. 1995) (holding that the filed rate doctrine precludes a RICO action); *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 22 (2d Cir. 1994) (same); *see also Taffet v. S. Co.*, 967 F.2d 1483, 1485-86, 1488 (11th Cir. 1992) (en banc) (same); *H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 494 (8th Cir. 1992) (same).

[5]*See Dynegy*, 375 F.3d at 836-37, 852-53; *TANC*, 295 F.3d at 932-33.

[6]*See Duke Energy Trading & Mktg., L.L.C. v. Davis*, 267 F.3d 1042, 1056-59 (9th Cir. 2001).

[7]We note that Wah Chang is not attacking the contract it had with PacifiCorp; it seeks damages against the Energy Companies only. *Cf. Grays Harbor*, 379 F.3d at 652-53 (an attempt to reform a contract might be sustainable, but damages are not available).

mined that all of the customers' claims challenged "a rate that a federal agency [FERC] has reviewed and filed." *Id.* at 866. The claims were, therefore, barred by the filed rate doctrine. *Id.* at 867. Wah Chang's claims amount to the same thing. Try as it may, Wah Chang cannot avoid the fact that it seeks what amounts to having the courts determine what rates the Energy Companies should have charged instead of the rates they did charge. Wah Chang would inevitably drag the courts into a determination of what rate would be fair and proper. That is precisely what Wah Chang cannot do. *See TANC*, 295 F.3d at 930 (holding that courts can neither set a rate different from that set by FERC nor assume a different hypothetical rate).

Wah Chang attempts to reinforce its faltering attack on the filed rate fortress by rushing in snippets from various opinions, but those troops are not up to the task assigned to them. For example, Wah Chang points to the exception for antitrust actions by competitors,[8] but ignores the fact that we have not extended that exception to a third-party customer,[9] which it admits it is. And, Wah Chang argues, the doctrine was originally designed to prevent price discrimination among customers,[10] which it perceives no danger of here, but, even if its own perception is not obscured, it ignores the fact that an exceedingly strong prop for the doctrine is preservation of the exclusive role of the regulatory agencies.[11] Wah Chang's actions would undermine that role. Still, Wah Chang says, it will not have a separate right of action for damages if it does not have this one,[12] but lack of a damage remedy is not determinative.[13]

---

[8] *See Cost Mgmt. Servs., Inc. v. Wash. Natural Gas Co.*, 99 F.3d 937, 945-48 (9th Cir. 1996).

[9] *County of Stanislaus*, 114 F.3d at 866; *see also*, *Cost Mgmt.*, 99 F.3d at 945 (clarifying that it is speaking about competitors, not customers).

[10] *See Keogh*, 260 U.S. at 163, 43 S. Ct. at 49-50; *Verizon Del., Inc. v. Covad Comms. Co.*, 377 F.3d 1081, 1086 (9th Cir. 2004).

[11] *Verizon Del.*, 377 F.3d at 1086.

[12] *See Keogh*, 260 U.S. at 162, 43 S. Ct. at 49 (alluding to possible separate right).

[13] *See County of Stanislaus*, 114 F.3d at 862-67; *see also Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 254-55, 71 S. Ct. 692, 697, 95 L. Ed. 912 (1951); *Lockyer*, 383 F.3d at 1016.

We will not speculate about other possible remedies against (or involving) those from whom Wah Chang actually purchased electricity.

Wah Chang does point to a case allowing relief where sham protests were filed with an agency in order to delay rate requests by the plaintiff,[14] but neither the rates ultimately adopted by the agency nor its own procedures were in question.[15] That case avails Wah Chang nothing; it is far removed from the rate claims made here.

Finally, Wah Chang ululates about FERC's lax oversight, but laxness does not indicate, much less establish, that Wah Chang can turn directly to the courts for rate relief. *See Square D*, 476 U.S. at 422, 106 S. Ct. at 1929-30; *Lockyer*, 383 F.3d at 1016. To permit it to do so would make the vices suppressed by the filed rate doctrine recrudescent.

In fine, none of these added points overcomes, or even seriously undermines, the fact that what Wah Chang seeks against the Energy Companies is a deviation in its favor from the FERC-accepted wholesale power rates that Wah Chang, by its own hypothesis, wound up being charged with.[16]

## CONCLUSION

[5] There may well have been a shadow of wrongdoing brooding over the Pacific Northwest wholesale power market, but Wah Chang cannot succeed in this forum. The filed rate doctrine bars its rate-based action,[17] just as it has barred the

---

[14]*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1250-51, 1254 (9th Cir. 1982).

[15]*Id.* at 1266-67.

[16]We are well aware of *E.&J. Gallo Winery v. Encana Corp.*, 05-17352, slip op. 12523 (9th Cir. Sept. 19, 2007). However, that does not affect our analysis because, as *Gallo* acknowledges, FERC's control over the natural gas market is quite different from its control over the electricity market.

[17]Because we hold that the filed rate doctrine completely disposes of this case, we do not address the issues of field and conflict preemption.

similar actions brought by other victims of the 2000-2001 energy crisis. Perhaps Wah Chang can hope to obtain relief for some of its alleged damages, but it cannot realize that hope in this litigation.

AFFIRMED.

---

PREGERSON, Circuit Judge, dissenting:

These cases require us to decide whether the filed rate doctrine bars the claims of retail electricity consumers who do not directly challenge FERC's established rates. Because I believe we should not extend the reach of this flawed doctrine, I dissent.

The majority holds that the filed rate doctrine bars the claims of Wah Chang, a retail consumer of electricity. The filed rate doctrine, a doctrine of agency deference, prohibits courts from invalidating FERC-established rates. *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 852-53 (9th Cir. 2004). Pursuant to this doctrine, we have required those who contest a filed rate to first bring their claims before FERC. *See, e.g.*, *Pub. Util. Dist. No. 1 of Snohomish County v. Dynegy*, 384 F.3d 756, 762 (9th Cir. 2004); *California ex rel. Lockyer v. FERC*, 383 F.3d 1006, 1012 (9th Cir. 2004). In this case, however, the plaintiff is not directly contesting a filed rate, and it is not clear that FERC has jurisdiction to hear Wah Chang's claims.

I.

Wah Chang, a chemical manufacturer with a plant in Oregon, contracted with PacifiCorp, its local electricity utility, to provide electricity for its plant. Under the terms of the agreement, the price of electricity was indexed to spot market wholesale prices at the California-Oregon border, as reported

by the Dow Jones California-Oregon Border Electricity Price Index ("Dow Jones COB Index"). Wah Chang alleges that the Defendants engaged in illegal practices that artificially raised electricity prices throughout the Pacific Northwest, including at the delivery points considered by the Dow Jones COB Index.

Wah Chang did not purchase electricity from the Defendants, nor does Wah Chang challenge any filed rates. Instead, Wah Chang alleges that (1) the Defendants' illegal market manipulations artificially increased filed rates, (2) these filed rates influenced the Dow Jones COB Index, (3) Wah Chang's contract with PacifiCorp tied energy prices to the Dow Jones COB Index, and thus (4) Wah Chang paid higher energy prices as a result of the Defendants' illegal market manipulations.[1]

Wah Chang is not asking the court to calculate what the filed rates should have been but instead is seeking acknowledgment that the Defendants' fraudulent actions and anti-trust market manipulations adversely affected Wah Chang's retail

---

[1] I am also aware of *E. & J. Gallo Winery v. Encana Corp.*, ___ F.3d ___, 2007 WL 2713126 (9th Cir. 2007). One of the issues presented in *E. & J. Gallo* was whether all the rates reported in the natural gas indices were authorized by FERC. The court conducted an in-depth analysis of the Natural Gas Policy Act of 1978, Pub.L. No. 95-621, 92 Stat. 3352 (codified as amended at 15 U.S.C. §§ 3301-3432 (1994)), and the Wellhead Decontrol Act of 1989, Pub.L. No. 101-60, 103 Stat. 157, to determine that certain rates reported were not FERC-authorized. Thus, the court held that the plaintiff, a retail purchaser of natural gas, was not barred from bringing damages claims to the extent that they were based on rates derived from transactions that were not subject to FERC's jurisdiction.

Here, the issue presented is different. It is not whether the Dow Jones COB Index included reports of market rates that were not authorized by FERC; the issue is whether the Defendants' illegal practices affected filed rates, in turn influencing the Dow Jones COB Index. For this reason, and because FERC's control of the natural gas market is different from its control over the electricity market, I agree that *E. & J. Gallo* does not control the outcome of this case.

contract with PacifiCorp. Although Wah Chang alleges injury resulting from the Defendants' actions, its claims arise out of a retail contract between Wah Chang and PacifiCorp, and not from a wholesale contract between Wah Chang and any of the Defendants.[2] Thus, Wah Chang's claims do not fall directly under the purview of the filed rate doctrine because Wah Chang is not seeking a judicial review of the validity of the filed rate, nor is Wah Chang asking the court to establish what the filed rate should have been.

## II.

We have deferred to FERC cases arising out of the 2000-2001 energy crisis where the cases involved evaluation of FERC-established filed rates. FERC's jurisdiction in such situations is clear. It is not clear, however, that FERC has jurisdiction over Wah Chang's claims.

Under the Federal Power Act ("FPA"), FERC has jurisdiction over facilities engaged in "the transmission of electric energy in interstate commerce and [ ] the sale of electric energy at wholesale in interstate commerce." 16 U.S.C. § 824(b)(1).[3] However, "[r]etail sales of electricity and wholesale intrastate sales are within the exclusive jurisdiction of the States." *Duke Energy Trading & Mktg., L.L.C. v. Davis*, 267 F.3d 1042, 1056 (9th Cir. 2001).

---

[2]The majority suggests that the present case is controlled by *County of Stanislaus*, 114 F.3d 858, 863 (9th Cir. 1997), in which we held that the filed rate doctrine barred customers' antitrust claims against a public utility and its pipeline subsidiary. The present case is distinguishable. Although the plaintiffs in *County of Stanislaus* were also retail consumers of a public utility, they directly challenged a filed rate. *Id*. at 863. By contrast, Wah Chang alleges it was injured because its retail contract with PacifiCorp was indexed to the Dow Jones COB Index, not to a specific filed rate.

[3]The federal government could regulate retail sales and wholesale intrastate sales under its expansive Commerce Clause power. Congress has not chosen to do, however, but has limited FERC's reach to interstate transmission of electricity and wholesale interstate transactions.

Wah Chang purchased power for its chemical manufacturing facility from PacifiCorp, its local electric utility. This transaction was a retail intrastate purchase, not a wholesale interstate transaction subject to FERC's regulatory oversight. Wah Chang did not contract with the Defendants and does not seek a refund of filed rates. Therefore, it is not clear that FERC could entertain Wah Chang's claim for relief.[4] When FERC does not have jurisdiction over a claim, the rationale for the filed rate doctrine does not apply.

## III.

The majority argues that granting Wah Chang relief will necessarily require the court to determine what the filed rate should have been. Maj. Op. 15095-96. But, there is no need to do that to calculate damages in this case.

For example, Wah Chang suggests that the District Court could calculate a monetary remedy based on the difference between the Dow Jones COB rate and an existing alternate uncorrupted rate under which Wah Chang could have purchased power. Wah Chang contends that if it had not executed the retail contract tying prices to the Dow Jones COB Index, it would have purchased power from PacifiCorp under a default retail tariff established by the Oregon Public Utilities Council ("OPUC"). Thus, the District Court could calculate Wah Chang's damages based on the difference between the rates Wah Chang paid under the retail contract with PacifiCorp and the rates it would have paid under the OPUC default retail tariff. This method of computing damages would not require the District Court to calculate what the appropriate rate should have been absent the Defendants illegal conduct.[5]

[4]Although the Defendants argue that Wah Chang intervened in related FERC proceedings, the majority denied a request that we take judicial notice of those proceedings. Therefore, we cannot determine whether FERC has agreed to hear any of Wah Chang's claims.

[5]This is but one example of a potential damage calculation a district court could consider on remand. Wah Chang also asserts damage claims based on consequential damages, calculation of which would not necessarily involve examination of any rates.

IV.

In sum, Wah Chang's position as a outsider to the chain of transactions flowing from FERC rates is important in three respects. First, because Wah Chang did not contract with any of the Defendants, it is not clear that Wah Chang could pursue its claim before FERC. Second, because Wah Chang is not a customer of a regulated entity, an award of relief to Wah Chang does not raise the specter of price discrimination among competing customers. Third, because Wah Chang did not purchase power from the Defendants, it does not seek, and would not benefit from, a refund of a filed rate.

Wah Chang did not directly participate in transactions regulated by FERC and does not seek to invalidate a filed rate approved by FERC. Nonetheless, the majority invokes the filed rate doctrine to avoid impinging on FERC's authority to regulate wholesale interstate power sales. I do not agree that Wah Chang's claims would require a court to review filed rates approved by FERC.

One other important point: the original purpose of the filed rate doctrine is to ensure that all those who compete in the same market and transfer their products by rail are charged at the same rate. The doctrine has been extended to prevent price discrimination in the electricity industry. *See Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251-52 (1951). The purpose of the filed rate doctrine is not to protect companies engaging in illegal anti-trust manipulative practices.

I would reverse the district court's dismissal and remand for further proceedings.