**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-17-1224-KuFS |
| KRISTINE L. ADAMS, | Bk. No. 8:09-bk-12450-TA |
| Debtor. | Adv. No. 8:16-ap-01238-TA |
| KRISTINE L. ADAMS | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| NEWPORT CREST HOMEOWNERS ASSOCIATION, INC., | |
| Appellee. | |

Submitted Without Argument on July 27, 2018

Filed – August 7, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Theodor C. Albert, Bankruptcy Judge, Presiding

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:    Appellant Kristine L. Adams pro se on brief; Brian R. Nelson of Ringstad & Sanders, LLP on brief for Appellee Newport Crest Homeowners Association, Inc.

_____

Before: KURTZ, FARIS, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Kristine Lynne Adams sued Newport Crest Homeowners Association, Inc. (NCHOA) and others in the California state court seeking damages and remediation of her condominium due to water intrusion, mold, and other issues. The parties mediated their dispute and reached a settlement. Due to NCHOA's failure to repair and remediate her property, Ms. Adams moved to enforce the settlement agreement. The state court denied her request and dismissed the lawsuit because it had settled. Ms. Adams appealed the dismissal and at the same time filed a second lawsuit to enforce the settlement agreement. Both matters were pending when she filed a chapter 7[1] bankruptcy petition.

Postpetition, Ms. Adams filed a reply in the dismissal appeal. The California Court of Appeal later affirmed the trial court's decision. Ms. Adams received her § 727 discharge and her case was closed. NCHOA

_____

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

then successfully moved for its fees and costs in the state court on the basis that it was the prevailing party in Ms. Adams' litigation to enforce the settlement agreement and her appeal of the dismissal of the first lawsuit. Ms. Adams appealed that ruling which was affirmed. NCHOA moved again for its attorney's fees and costs on appeal which were again granted. Meanwhile, in the second lawsuit after a trial, the jury found that NCHOA breached the settlement agreement and awarded Ms. Adams damages.

NCHOA then reopened Ms. Adams bankruptcy case and filed an adversary complaint. NCHOA alleged that its fee awards were excepted from Ms. Adams' discharge under the return to the fray doctrine. Therefore, it sought to setoff or recoup its fee awards against Ms. Adams' judgment in the second lawsuit. In granting NCHOA's motion for summary judgment, the bankruptcy court found that its fee awards were excepted from discharge under the return to the fray doctrine and that NCHOA was entitled to offset and recoup its fee awards against Ms. Adams' judgment claim. This appeal followed.

For the reasons explained below, we AFFIRM the bankruptcy court's grant of summary judgment on NCHOA's first claim for relief finding that the fee awards were excepted from discharge under the return to the fray doctrine. We VACATE the bankruptcy court's grant of summary judgment on NCHOA's claims for setoff and recoupment and remand with instructions to dismiss these claims without prejudice for lack of

jurisdiction.

## FACTUAL BACKGROUND

**A.     The First Lawsuit And Ms. Adams' Bankruptcy**

In 2005, Ms. Adams filed a lawsuit against NCHOA and others in the California Superior Court titled *Adams v. Newport Crest Homeowners Association, et al.*, O.C.S.C. Case No. 05CC05516 (First Lawsuit). Ms. Adams alleged bodily injury and property damages arising out of water intrusion and mold in her condominium unit.

In November 2006, before trial, Ms. Adams, NCHOA, and other defendants went to mediation which resulted in a signed settlement agreement and release between the parties. The settlement had a monetary component in the amount of $500,000.00, and a performance component that required NCHOA to remediate and repair Ms. Adams' condominium. The agreement also contained an attorney's fee provision that authorized an award of reasonable attorney's fees and costs to the prevailing party in a dispute to enforce the agreement. Finally, if a dispute arose pertaining to the agreement, the parties agreed to submit the dispute first to a mediator and if issues remained unresolved, the state court would retain jurisdiction to enforce the terms of the settlement.

In June 2007, Ms. Adams filed a motion to enforce the settlement agreement in the state court, asserting that NCHOA had breached the agreement by failing to repair and remediate her property. NCHOA

4

opposed the motion and filed an ex parte application demanding that the state court order the parties to mediation which was required under the terms of the settlement agreement. The state court granted NCHOA's ex parte application, and ordered the parties to mediate their dispute before additional litigation took place.

For reasons that are not completely clear from the record, no mediation took place. The state court sua sponte issued an order to show cause why the First Lawsuit should not be dismissed. After a hearing, the state court ordered the First Lawsuit dismissed on the basis that the matter had been settled. The state court later denied Ms. Adams' motion for reconsideration of the dismissal. Ms. Adams appealed the state court's dismissal and filed her opening brief in late 2008 (First Appeal). NCHOA filed its brief in January 2009.

On March 23, 2009, Ms. Adams filed her chapter 7 bankruptcy case. After her bankruptcy filing, Ms. Adams filed a reply brief in the First Appeal, seeking a reversal of the order dismissing the First Lawsuit, a determination of the validity and enforceability of the settlement agreement, and an award of attorney's fees on appeal against NCHOA.

In September 2009, the California Court of Appeal affirmed the state court's dismissal order. The Court of Appeal found that the court had correctly interpreted the settlement agreement to mean that there would be no court litigation over whether NCHOA had breached its obligations

under the settlement agreement without first giving a mediator an opportunity to resolve the dispute.

On November 24, 2009, Ms. Adams filed an amended Schedule F which listed NCHOA as a creditor which was owed attorney's fees and costs on appeal in an unknown amount.

On December 2, 2009, Ms. Adams received her § 727 discharge and her no asset case closed shortly thereafter.

A few weeks after the bankruptcy case was closed, NCHOA filed a motion in the state court seeking attorney's fees and costs incurred in connection with opposing Ms. Adams' motion to enforce the settlement agreement and her First Appeal. NCHOA asserted that it was the prevailing party and entitled to its fees and costs under the terms of the settlement agreement. In August 2010, the state court granted NCHOA's motion, awarding $59,746.26 in attorney's fees and costs, plus interest (First Fee Award).

Ms. Adams appealed from this decision (Second Appeal). In March 2012, the court of appeal affirmed the fee award. In June 2012, NCHOA again filed a motion for attorney's fees and costs incurred in opposing Ms. Adams' Second Appeal (Second Fee Award). On September 6, 2012, the state court granted NCHOA's motion, awarding it $17,296.00 in attorney's fees and costs plus interest against Ms. Adams. On October 26, 2012, the state court entered a final fee award which included the First and

Second Fee Awards and accrued interest for a total of $89,705.15 (collectively, the Fee Award).

**B.      Second Lawsuit**

In October 2007, prior to the petition date and dismissal of the First Lawsuit, Ms. Adams filed a second action against NCHOA and other defendants in the California Superior Court titled *Adams v. Newport Crest Homeowners Association, et al.*, O.C.S.C. Case No. 07CC01390 (Second Lawsuit). The complaint alleged fifteen causes arising under the agreement.

In January 2008, NCHOA filed a demurrer, arguing that Ms. Adams' fifteen causes of action boiled down to two legal claims: fraudulent inducement to enter into the settlement agreement and breach of the settlement agreement. NCHOA further argued that the first set of claims was barred by the litigation privilege and that the second set of claims had already been fully adjudicated in the First Lawsuit. Although the state court held a hearing on the demurrer in May 2008, it declined to rule on it due to Ms. Adams' pending appeal of the trial court's dismissal of the First Lawsuit.

The Second Lawsuit was reinstated in February 2011, long after the closing of Ms. Adams' bankruptcy case. On May 2, 2011, the state court sustained NCHOA's demurrer to Ms. Adams' complaint without leave to amend. However, on the following day, the state court, sua sponte, vacated

its order and took the matter under submission to further consider the parties' written and oral arguments.

Ms. Adams filed a request for further briefing. She represented to the court that subsequent to the decision in the First Appeal, she attended mediation in January 2010. Because the dispute was not settled, Ms. Adams argued that she was entitled to seek a judicial resolution of NCHOA's alleged breach of the settlement agreement. The trial court declined her request for additional briefing.

Thereafter, the court sustained the demurrer without leave to amend, finding that Ms. Adams' causes of action were either barred by the litigation privilege (for pre-settlement conduct) or res judicata in the First Lawsuit. The Second Lawsuit was dismissed. NCHOA moved for an award of attorney's fees and costs. On August 15, 2011, the state court awarded it $37,336.00 in fees and costs, plus interest against Ms. Adams.

Ms. Adams appealed, seeking to overturn the judgment of dismissal. On August 16, 2012, the court of appeal issued an opinion reversing the judgment of dismissal and award of attorney's fees and remanded the matter for further proceedings. The court of appeal explained that the trial court had misinterpreted its ruling affirming the dismissal of the First Lawsuit. The court of appeal stated that if the mediator did not resolve the matter, the trial court had jurisdiction to do so. Since Ms. Adams contended that she had submitted the matter to mediation — although it did not settle

— the court of appeal found that she could now seek a judicial remedy. Due to the reversal of the dismissal, the court of appeal found that the trial court's award of attorney's fees and costs to NCHOA must also fail.

Ms. Adams' fifth amended complaint became the operative complaint in the Second Lawsuit. It alleged two causes of action: breach of contract against the signatories to the settlement agreement in the First Lawsuit and intentional infliction of emotional distress.

On May 29, 2015, NCHOA served on Ms. Adams a settlement offer under Cal. Code of Civ. Proc. § 998 for $110,000 plus a waiver of the Fee Award in the amount of $89,705.15 (998 Offer). Ms. Adams did not accept the 998 Offer and the matter went to trial on May 16, 2016. The jury rendered a verdict on June 2, 2016, finding in favor of Ms. Adams and awarding her damages in the amount of $142,599.00. On August 5, 2016, the state court entered judgment on the jury's verdict.

Thereafter, the state court held a hearing on Ms. Adams' motion for a new trial. The court denied the motion in its entirety. About two weeks later, the state court held a hearing on Ms. Adams' motion for prejudgment interest. The court granted the motion in part, and denied it in part, awarding Ms. Adams $80,679.71 in prejudgment interest.

On September 2, 2016, Ms. Adams filed a notice of appeal from the final judgment and other orders from 2015 and 2016. She also served a motion for an award of attorney's fees in the amount of $283,626.15 and

costs in the amount of $55,915.15.

## C.  The 998 Issue and Reopening of the Bankruptcy Case

A dispute arose between NCHOA and Ms. Adams over whether she was a prevailing party in the Second Lawsuit entitled to attorney's fees and costs. In opposition to Ms. Adams' motion for attorney's fees and costs, NCHOA argued that she was not entitled to fees and costs under the plain terms of the settlement agreement and also because she did not obtain a more favorable judgment than the 998 Offer. According to NCHOA, its 998 Offer consisted of $110,347.52 in cash and also its waiver of the Fee Award which made the 998 Offer worth $220,347.52. NCHOA contended that Ms. Adams' judgment plus interest and costs was less.

NCHOA also disputed Ms. Adams' contention that the Fee Award was discharged during her bankruptcy in 2009. NCHOA pointed out that Ms. Adams never argued in her appeal of the First Fee Award that it had been discharged thereby waiving her right to raise this argument. NCHOA also contended the Fee Award was not discharged under the return to the fray doctrine. Finally, NCHOA contended that it was entitled to an offset for the judgment it obtained against Ms. Adams and that the doctrine of recoupment applied.

On September 28, 2016, NCHOA filed a motion to reopen Ms. Adams' bankruptcy case seeking to have the bankruptcy court decide these issues and to ensure that NCHOA did not inadvertently violate the

10

discharge injunction.

**D.    The Bankruptcy Court's Rulings**

The bankruptcy court granted NCHOA's motion to reopen Ms. Adams' bankruptcy case. NCHOA filed an adversary complaint alleging five claims for relief: (1) declaratory relief determining that the Fee Award was not discharged based on the return to the fray doctrine; (2) declaratory relief determining that Ms. Adams was equitably estopped from arguing that the Fee Award was discharged because she never raised the discharge in opposing the fees; (3) declaratory relief determining that Ms. Adams waived her right to assert that the Fee Award was discharged because she failed to assert that NCHOA's claims for attorney's fees and costs were discharged in the bankruptcy case prior to entry of the judgment in the Second Lawsuit; (4) to allow NCHOA to set off the Fee Award against Ms. Adams' judgment; and (5) to allow NCHOA to recoup the Fee Award against Ms. Adams' judgment.

Ms. Adams filed an answer and asserted various counterclaims, including (1) damages and sanctions against NCHOA for violating the discharge injunction; (2) declaratory relief determining that NCHOA's 998 Offer was not valid; and (3) setoff in relation to amounts incurred by Ms. Adams in  litigating her Second Lawsuit and amounts allegedly seized from Ms. Adams' bank account under a default judgment in a collection action.

NCHOA filed a motion for summary judgment on its complaint. The bankruptcy court granted in part and denied in part the motion for summary judgment. On the first claim for relief, the bankruptcy court decided as a matter of law that the Fee Award was not discharged under the return to the fray doctrine. On the fourth claim for relief, the court found as a matter of law that NCHOA's setoff rights survived the bankruptcy discharge and that all elements for setoff under § 553 were met. Finally, on the fifth claim for relief, the bankruptcy court found as a matter of law that NCHOA could recoup the Fee Award against Ms. Adams' claim as the claims arose out of the same transaction. The court reasoned that the First Lawsuit directly led to both the Fee Award and Ms. Adams' judgment against NCHOA and thus were logically related to each other. The court denied the motion as to the second and third claims for relief.

At the same time, NCHOA filed a motion to dismiss Ms. Adams counter-claims under Civil Rule 12(b)(6). NCHOA argued that her claim for damages for the alleged violation of the discharge injunction and her request for setoff should be dismissed with prejudice on the grounds that res judicata (claim preclusion) applied because both claims were litigated or could have been litigated in prior proceedings that resulted in final adjudications on the merits that involved the same parties. NCHOA further argued that the Fee Award was not discharged because (1) Ms. Adams returned to the fray; (2) Ms. Adams' should be equitably estopped from

asserting that the Fee Award was discharged; and (3) Ms. Adams waived her right to assert the Fee Award was discharged. Finally, NCHOA argued that Ms. Adams' claim for setoff failed to state a claim for relief because none of the claims she sought to use for setoff were actual obligations for which NCHOA was responsible.

The bankruptcy court granted the motion to dismiss on Ms. Adams' first claim for relief for NCHOA's alleged violation of the discharge injunction without prejudice. The court found that the claim was barred by the doctrine of claim preclusion. The court abstained from deciding the second claim regarding the validity of the 998 Offer. Finally, the court granted the motion to dismiss the third claim for relief for setoff without prejudice on the grounds that Ms. Adams had failed to allege that she had a judgment against NCHOA for the amounts allegedly seized or that NCHOA had any obligation to pay those funds to her. The court further stated that the counter-complaint did not mention § 553 and that Ms. Adams should seek setoff in the state court. Accordingly, Ms. Adams' first and third counter claims survived the motion to dismiss with leave to amend.

The bankruptcy court entered orders on its rulings in connection with NCHOA's motion to dismiss and summary judgment. Ms. Adams filed a premature notice of appeal from these orders.

Ms. Adams filed an amended counter- complaint, adding a sole cause

of action for "false claim/fraud," alleging that NCHOA's filing of its proof of claim was false and fraudulent. She did not amend her first and third counter claims.

About the same time, NCHOA moved for leave to amend its complaint to withdraw two claims for relief that it did not intend to pursue and for judgment on the amended complaint. NCHOA also moved to dismiss all claims in Ms. Adams' amended counter complaint with prejudice.

Before these motions were heard in the bankruptcy court, NCHOA moved to dismiss Ms. Adams' appeal to this Panel as interlocutory. The parties entered into a stipulation asking the Panel to suspend its adjudication of NCHOA's motion to dismiss until the final motions were heard in the bankruptcy court. The Panel subsequently entered an order approving the suspension.

Meanwhile, the bankruptcy court heard NCHOA's motions on November 30, 2017. The bankruptcy court granted NCHOA's motion to dismiss Ms. Adams' amended counter-complaint. The court found there was no need to "re-dismiss" Ms. Adams' first and third counterclaims as those had already been dismissed and "technically" she was barred from reasserting those claims because of her failure to timely amend. The court dismissed her amended claim for relief with prejudice.

The court also granted NCHOA leave to amend the complaint and

then later entered judgment on NCHOA's amended complaint. The court entered judgment on the first claim for relief, finding that the Fee Award was not discharged under the return to the fray doctrine. The second and third claims for relief were withdrawn in the amended complaint. The bankruptcy court entered judgment on the fourth claim for relief, finding that NCHOA was entitled to use the Fee Award to set off against Ms. Adams' judgment under § 553(a). The bankruptcy court also found in favor of NCHOA on the fifth claim for relief, finding that it was entitled to use the Fee Awards to recoup against Ms. Adams' judgment. After entry of the bankruptcy court's judgment, this appeal proceeded.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I) to construe the scope of the discharge injunction. For the reasons discussed below, we conclude that the bankruptcy court did not have jurisdiction over NCHOA's claims for setoff and recoupment. We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred in granting summary judgment in favor of NCHOA on the basis that NCHOA's Fee Award was excepted from discharge under the return to the fray doctrine;

Whether the bankruptcy court had jurisdiction to determine NCHOA's claims for setoff and recoupment.

## STANDARDS OF REVIEW

We review summary judgment orders de novo. *Tobin v. San Souci Ltd. P'ship (In re Tobin)*, 258 B.R. 199, 202 (9th Cir. BAP 2001). Viewing the evidence in the light most favorable to the non-moving party, we must determine "whether there are any genuine issues of material fact and whether the trial court correctly applied relevant substantive law." *Id.*

When reviewing an order granting summary judgment, we may neither weigh the evidence nor determine the truth of the matter, but only determine whether there is a genuine issue for trial. *Abdul–Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996). We may affirm an order granting summary judgment on any ground supported by the record. *Simo v. Union of Needletrades, Indus. & Textile Employs.*, 322 F.3d 602, 610 (9th Cir. 2003).

Summary judgment may be appropriate when a mixed question of law and fact involves undisputed underlying facts. *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1103 (9th Cir. 1998). "[W]here the underlying facts are undisputed, a [bankruptcy] court is free, on a motion for summary judgment, to determine whether the established facts satisfy the statutory standard." *Miller v. Schuman (In re Schuman)*, 81 B.R. 583, 586 n.1 (9th Cir. BAP 1987). Summary judgment is improper, however, if material factual issues exist for trial. *Simo*, 322 F.3d at 610.

Whether a debtor's post-discharge conduct exposes him or her to

16

attorney's fees liability arising from a prepetition contract is a mixed question of law and fact that "require[s] the consideration of legal concepts and involve[s] the exercise of judgment about the values underlying legal principles," and is therefore subject to de novo review. *Suzy's Zoo v. Comm'r*, 273 F.3d 875, 878 (9th Cir. 2001) (a mixed question "exists when primary facts are undisputed and ultimate inferences and legal consequences are in dispute").

We review the bankruptcy court's subject matter jurisdiction over NCHOA's claims for setoff and recoupment de novo. *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 736 (9th Cir. 2009). We also review de novo whether the bankruptcy court had supplemental jurisdiction under 28 U.S.C. § 1367(a) over NCHOA's claims for setoff and recoupment. *Trs. of the Constr. Indus. and Laborers Health and Welfare Trs. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003).

## DISCUSSION

### A.     Exception to Discharge:  Return to the Fray Doctrine

Section 727 discharges the debtor from all debts that arose before the date of the order for relief. The Code defines "debt" as "liability on a claim." § 101 (12). "Claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured, or unsecured." § 101(5)(A). Whether a claim exists generally is determined as

17

of the date of the bankruptcy petition. This "broadest possible definition" of claim is designed to ensure that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *SNTL Holdings Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 839 (9th Cir. 2009) (citing *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F. 2d 925, 929 (9th Cir. 1993)).

Under Ninth Circuit law, "[a] claim is 'contingent' when 'the debtor will be called upon to pay [it] only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor,'" and "[a] claim is 'unliquidated' when it is not 'subject to ready determination and precision in computation of the amount due.'" *Picerne Constr. Corp. v. Castellino Villas, A. K. F. LLC (In re Castellino Villas, A. K. F. LLC)*, 836 F.3d 1028, 1033 (9th Cir. 2016) (citing *Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306 (9th Cir. 1987)). The Ninth Circuit applies the "fair contemplation" test for determining whether a contingent or unmatured claim has sufficiently arisen as of the petition date to constitution a pre-petition claim. *Id.* at 1034.

Under this test, "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *Id.* (*quoting In re SNTL Corp.*, 571 F.3d at 839).

Here, NCHOA acknowledges that prior to the petition date it could

18

reasonably contemplate that it would have claims for attorney's fees and costs in the pending appeal of the dismissal of the First Lawsuit and in the Second Lawsuit if it was a prevailing party in either matter. Therefore, these attorney's fee claims were contingent claims as of the petition date under the fair contemplation test.

Section 542(a) prescribes the legal effect of a discharge:

> (a) A discharge in a case under this title—. . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

"The purpose of the discharge injunction is to protect the debtor from having to put on a defense in an improvident state court action or otherwise suffer the costs, expense and burden of collection activity on discharged debts." *Emmert v. Taggart (In re Taggart)*, 548 B.R. 275, 286 (9th Cir. BAP 2016) (citing *In re Eastlick*, 349 B.R. 216, 229 (Bankr. D. Idaho 2004), *aff'd* 888 F.3d 438 (9th Cir. 2018).

While a discharge in bankruptcy generally relieves a debtor from all prepetition debts, the Ninth Circuit has adopted a different standard for determining for discharge purposes when an attorney's fee claim arises. "Under that standard, even if the underlying claim arose prepetition, the claim for fees incurred postpetition on account of that underlying claim is deemed to have arisen postpetition if the debtor 'returned to the fray'

19

postpetition by voluntarily and affirmatively acting to commence or resume the litigation with the creditor." *Id.* at 288-89 (citing *Bechtold v. Gillespie (In re Gillespie)*, 516 B.R. 586, 591 (9th Cir. BAP 2014) (citing *Boeing N. Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018, 1026-27 (9th Cir. 2005)). The rule prevents a debtor from using the discharge injunction as a sword that enables him or her to undertake risk-free postpetition litigation at others' expense. Id. "The *Ybarra* rule applies regardless of whether the litigation begins prepetition or postpetition, regardless of the nature of the underlying claim, and regardless of the forum in which the postpetition litigation takes place." *Id.*

Here, NCHOA's contingent attorney's fee claims, whether in connection with the First Lawsuit or the Second Lawsuit, were discharged and subject to the discharge injunction. However, the undisputed facts show that Ms. Adams voluntarily and affirmatively resumed the litigation with NCHOA postpetition in connection with her appeal of the state court's order dismissing her First Lawsuit. The record shows that Ms. Adams filed her reply brief in the appeal postpetition. After her discharge, she opposed NCHOA's motion for attorney's fees. After the trial court awarded NCHOA's its attorney's fees, Ms. Adams appealed that decision. She ignored her discharge and voluntarily and affirmatively sought relief by objecting to NCHOA's request for fees and seeking to overturn those fees in her appeal. In other words, she returned to the fray.

20

Likewise, the undisputed facts show that Ms. Adams resumed her efforts in prosecuting the Second Lawsuit against NCHOA postpetition. While Ms. Adams' discharge did not prevent NCHOA from putting on a defense in the Second Lawsuit, it did prevent NCHOA from seeking affirmative relief on prepetition claims such as prevailing party attorney's fees based on the parties' prepetition settlement agreement. After NCHOA won its demurrer and successfully moved for attorney's fees and costs, Ms. Adams pursued an appeal and voluntarily and affirmatively took actions to resume the litigation with NCHOA and otherwise return to the fray. Ultimately, Ms. Adams was successful in the Second Lawsuit.

Based on the undisputed facts, we conclude that Ms. Adams returned to the fray by continuing her litigation against NCHOA postpetition. Therefore, under the *Ybarra* rule, NCHOA's Fee Award in the First Lawsuit is deemed to have arisen postpetition and is excepted from her discharge. NCHOA's award of attorney's fees and costs in the Second Lawsuit is also deemed to have arisen postpetition. But for the reversal of that award by the state appellate court, it would be excepted from her discharge thereby negating any potential violation of the discharge injunction. Accordingly, the bankruptcy court properly granted summary judgment on NCHOA's first claim for relief.[2]

---

[2] Because we affirm the bankruptcy court's grant of summary judgment on

(continued...)

## B. Setoff And Recoupment

We may raise the question of the bankruptcy court's jurisdiction at any time sua sponte during the pendency of the action, even on appeal and when not raised by the parties. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

### 1. Subject Matter Jurisdiction

A bankruptcy court's subject matter jurisdiction is established by statute. Under 28 U.S.C. § 1334(b), a bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." "Arising under title 11" describes those proceedings that involve a cause of action created or determined by a statutory provision in the bankruptcy code. *In re Harris*, 590 F.3d at 737. "Proceedings 'arising in' a bankruptcy are generally referred to as 'core' proceedings, and essentially are proceedings that would not exist outside of bankruptcy. . . ." *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1193 (9th Cir. 2005); *see also Battleground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1131 (9th Cir. 2010). A nonexhaustive list of core proceedings is set out in 28 U.S.C. § 157(b)(2).

The bankruptcy court also has jurisdiction over "those proceedings that are 'related to' a bankruptcy case." *In re Pegasus Gold Corp.*, 394 F.3d at

---

[2](...continued)
NCHOA's first claim for relief under the return to the fray doctrine it is unnecessary to reach the court's ruling based on preclusion, on the dismissal of Ms. Adams' first counterclaim for violation of the discharge injunction.

1193. "[T]he test is whether . . . the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* (quoting *Fietz v. Great W. Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988)) (adopting the "Pacor test" derived from *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). The United States Supreme Court endorsed Pacor's conceivability standard with the caveats that "related to" jurisdiction "cannot be limitless," and that the critical component of the Pacor test is that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 & n.6 (1995).

Although the bankruptcy court plainly had core jurisdiction to interpret and enforce the discharge order, we consider whether the bankruptcy court had jurisdiction over NCHOA's claims to allow setoff and recoupment of its Fee Award against Ms. Adams' judgment awarded against NCHOA in the Second Lawsuit.

The lawsuits which resulted in the Fee Award and Ms. Adams' judgment claim were abandoned to Ms. Adams under § 554(c). Thus,

23

Ms. Adams' judgment claim belongs to her personally and, as explained above, the Fee Award has not been discharged and thus NCHOA may pursue collection of that award against Ms. Adams. Therefore, NCHOA's claims for setoff and recoupment do not impact the handling and administration of Ms. Adams' estate and are easily separable from the bankruptcy case.

Furthermore, NCHOA's claims for setoff and recoupment did not require the bankruptcy court to interpret or enforce the discharge order. Valid prepetition rights to setoff survive the general discharge of debts. *See Carolco Television, Inc. v. Nat'l Broad. Co. (In re De Laurentiis Entm't Group Inc.)*, 963 F.2d 1269, 1276 (9th Cir. 1992); *Camelback Hosp., Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233, 237 (9th Cir. BAP 1991). In addition, as recoupment is neither a claim nor a debt, it is unaffected by the debtor's discharge. *Oregon v. Harmon (In re Harmon)*, 188 B.R. 421, 425 (9th Cir. BAP 1995). In short, Ms. Adams' discharge would not be a bar to NCHOA's defensive use of setoff or recoupment.

In addition, NCHOA's substantive right to setoff and recoupment under § 553 is governed by California law. California law clearly recognizes the right to setoff, setting forth procedures for setoff in Cal. Code Civ. Proc. § 431.70, and a defense of equitable recoupment is a species of setoff. Simply put, NCHOA's setoff and recoupment rights are recognized in California and exist independent of Ms. Adams' bankruptcy

24

case.

Against this background, we conclude that the bankruptcy court did not have subject matter jurisdiction over NCHOA's claims for relief on setoff and recoupment. Those claims did not arise under title 11 nor can they be considered core proceedings "arising in" the bankruptcy as the claims exist outside the bankruptcy as California state law affirmative defenses. The claims also do not fall within the "related to" category for noncore proceedings. The setoff and recoupment claims could not have any conceivable effect on Ms. Adams' estate. Regardless whether NCHOA is successful or not with its claims of setoff and recoupment in the state court, Ms. Adams' estate is not impacted. Her case is closed and there is no estate to administer.

## 2. Supplemental Jurisdiction

Although not discussed or determined by the bankruptcy court, we also consider whether the bankruptcy court had supplemental jurisdiction over the setoff and recoupment claims. 28 U.S.C. § 1367, entitled "Supplemental jurisdiction," states:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over *all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.* [Emphasis added.]

25

Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

This provision codified the Supreme Court's holding in *United Mine Workers v. Gibbs* that federal courts have jurisdiction over a state law claim where it and the federal claim "derive from a common nucleus of operative fact," so "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" 383 U.S. 715, 725 (1966); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997).

The court must weigh "considerations of judicial economy, convenience and fairness to the litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." *Gibbs*, 383 U.S. at 726. However, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id*. If "state issues substantially predominate, . . . the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Id*. at 726–27. Moreover, where a bankruptcy court has no statutory or constitutional authority to hear a claim, the interest of judicial economy cannot create jurisdiction. *In re Pacor, Inc.,* 743 F.2d at 994.

The Ninth Circuit has applied 28 U.S.C. § 1367 to bankruptcy claims, even when the subject matter jurisdiction is based on "related to"

bankruptcy jurisdiction. *In re Pegasus Gold Corp.*, 394 F.3d at 1195; *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 n.5 (9th Cir. 1997); *see also Davis v. Courington (In re Davis)*, 177 B.R. 907 (9th Cir. BAP 1995) (holding that the bankruptcy court had supplemental jurisdiction over debtor's prepetition state law cause of action against a creditor bank because there was a common nucleus of facts between the prepetition state action and the bank's postpetition breach of the automatic stay).

Under the plain language of 28 U.S.C. § 1367(a), the setoff and recoupment claims must be "so related" to the scope of the discharge injunction inquiry (core jurisdictional issue) such that they form part of the same case or controversy under Article III of the United States Constitution. A state law claim is part of the same case or controversy when it shares a "common nucleus of operative fact" with the federal claims and the state and federal claims would normally be tried together. *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).

Here, NCHOA's claims for setoff and recoupment do not meet this standard. The facts necessary to establish whether the attorney's fee award in the First Lawsuit was subject to the discharge injunction differs from the factual background necessary to establish setoff and recoupment claims under California law. For the violation of the discharge injunction, NCHOA needed to show that the discharge did not apply to the postpetition attorney's fee award under the return to the fray doctrine - a

27

factual inquiry here resolved by undisputed facts on summary judgment. For the setoff and recoupment claims, NCHOA had to show facts that established the elements of setoff (and recoupment) of its attorney's fee award against Ms. Adams' judgment under California law. The facts relating to proving the elements of those claims would not assist the bankruptcy court in determining whether the attorney's fee award was subject to the discharge under the return to the fray doctrine. Further, the determination of setoff and recoupment rights does not require an interpretation of or enforcement of the discharge injunction as did the return to the fray doctrine. In short, NCHOA must show different facts which independently establish that it is entitled to setoff and recoupment under California law.

Therefore, we conclude that NCHOA's setoff and recoupment claims are too disparate to form part of the "same case or controversy." The facts and related evidence for proving that Ms. Adams returned to the fray do not overlap with the facts and the evidence needed to prove the elements for setoff and recoupment. The legal theories to be litigated with respect to those claims are wholly different. There is no common nucleus of operative facts.

In sum, the essential facts of the various claims are not logically connected such that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit. Accordingly, supplemental

jurisdiction did not empower the bankruptcy court to decide the setoff and recoupment claims.

## CONCLUSION

For the reasons explained above, we AFFIRM the bankruptcy court's grant of summary judgment on NCHOA's first claim for relief on the basis that the Fee Award was excepted from discharge under the return to the fray doctrine. We VACATE the bankruptcy court's grant of  summary judgment on NCHOA's claims for setoff and recoupment and remand with instructions to dismiss these claims without prejudice for lack of subject matter or supplemental jurisdiction.